USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/19/2025

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

COMPUTERSHARE TRUST COMPANY N.A. SOLELY IN ITS CAPACITY AS TRUSTEE FOR THE BENEFIT OF THE CERTIFICATEHOLDERS OF CFSP 2024-AHP1 MORTGAGE TRUST, COMMERCIAL MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2024-AHP1 MORTGAGE TRUST, acting by and through its special servicer, Berkeley Point Capital LLC d/b/a Newmark, as Special Servicer under the Pooling and Servicing Agreement dated as of December 30, 2024,

Plaintiff,

-against-

907 ASSOCIATES LLC, et al.,

Defendants.

25-CV-05015 (MMG)

**MEMORANDUM OPINION**

---

MARGARET M. GARNETT, United States District Judge:

Plaintiff Computershare Trust Company N.A. ("Plaintiff")[1] brings this action against 907 Associates LLC ("Borrower"), Gjek Gjonlekaj ("Guarantor") (collectively, "Defendants"), the New York City Department of Finance, the New York City Office of Administrative Trials and Hearings, the New York City Environmental Control Board, A.C.S. Oil Service, Inc., No Bug Pest Control, Inc., and any unknown tenants, occupants, persons, or corporations having or claiming an interest in the premises at issue in the litigation, in order to foreclose upon a mortgage for a principal amount of $4,000,000 that is secured by Borrower's property located at

---

[1] Plaintiff brings this action solely in its capacity as Trustee for the benefit of the Certificateholders of CFSP 2024-AHP1 Mortgage Trust, Commercial Mortgage Pass-Through Certificates, Series 2024-AHP1 Mortgage Trust ("Plaintiff"), acting by and through its special servicer, Berkeley Point Capital LLC d/b/a Newmark ("Special Servicer"), as Special Servicer under the Pooling and Servicing Agreement dated December 30, 2024.

1

907 East 221st Street, Bronx, New York (the "Property"). Plaintiff has moved for the appointment of a receiver for the Property and related assets during the pendency of this litigation. For the following reasons, the motion is GRANTED.

## BACKGROUND

On May 14, 2019, Borrower obtained a loan for $4,000,000 (the "Loan") from New York Community Bank ("Original Lender") and executed a promissory note to evidence its indebtedness (the "Note"). Dkt. No. 26 ("Barrett Decl.") ¶¶ 5–6. As collateral for the Loan, Borrower executed a mortgage (the "Mortgage") granting Original Lender a security interest in certain land, improvements, fixtures, personal property, leases, rents, and reserves as defined in the Mortgage with respect to the Property. *Id.* ¶¶ 7–9. After a series of transactions, all interests in the Loan, Note, and Mortgage eventually passed to Plaintiff. *Id.* ¶ 11.

Borrower defaulted on the Loan in September 2024 by failing to make the required monthly payments. *Id.* ¶ 17. Additional instances of default occurred when the Property became encumbered by certain mechanic's liens in late 2024 and early 2025. *Id.* In the event of default, the Mortgage provides a number of rights to Plaintiff, including the right to retain all rents from the Property (attendant to a right to revoke Borrower's license to collect such rents) and the right to have a receiver appointed to take control of the Property. *Id.* ¶¶ 14–16. After Borrower failed for approximately seven months to cure the defaults, Plaintiff issued a Notice of Default and Acceleration dated April 30, 2025. *Id.* ¶ 18. The Notice of Default and Acceleration revoked Borrower's license to collect rents and accelerated all sums due on the Loan. *Id.* Since that time, Borrower has failed to cure the defaults or to remit any rent payments to Plaintiff. *Id.* ¶ 21. It has also failed to pay certain property taxes pursuant to its obligations under the Mortgage, requiring Plaintiff to advance at least a portion of the taxes owed. *Id.* ¶ 24.

Plaintiff filed this action on June 13, 2025 (Dkt. No. 1) and moved for the appointment of a receiver on July 2, 2025 (Dkt. No. 25). The Court held a conference on August 15, 2025, attended by counsel for Plaintiff and counsel for Defendants. At the conference, the parties confirmed that there was no dispute regarding the foundational facts as laid out above. The only dispute is whether the appointment of a receiver is appropriate under the circumstances. As explained further below, that dispute concerns, *inter alia*, the relative harms that will befall the parties depending on whether a receiver is appointed. The Court offered the parties the opportunity to participate in an evidentiary hearing to further develop the factual record with respect to that issue, but Plaintiff and Defendants declined.

## DISCUSSION

Whether a federal court should appoint a receiver in a diversity action is governed by federal law. *U.S. Bank N.A. v. Nesbitt Bellevue Property LLC*, 866 F. Supp. 2d 247, 249 (S.D.N.Y. 2012) (citing *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)). "The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Rosen v. Siegel*, 106 F.3d 28, 34 (2d Cir. 1997) (internal references omitted). "The following factors are relevant to establishing the need for a receivership:

> [1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; and, [5] in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to his interests in the property."

*Varsames*, 96 F. Supp. 2d at 365 (quoting 12 Wright & Miller, Federal Practice & Procedure § 2983 (1999)) (internal references omitted).

Ordinarily, the plaintiff bears the burden to make an "adequate showing" that the

3

appointment of a receiver is necessary. However, where the defendant has consented to the appointment of a receiver in the mortgage agreement, the burden shifts to the defendant to demonstrate why a receiver should not be appointed. *See U.S. Bank Nat'l Ass'n v. 1078 Whillmore LLC,* 740 F. Supp. 3d 157, 177 (E.D.N.Y. 2024). Some courts hold that the burden remains with the plaintiff where the mortgage agreement merely provides that the plaintiff "*may apply* for the appointment of a receiver, but there is no explicit consent by the defendants to the appointment." *Nesbitt Bellevue Prop. LLC,* 866 F. Supp. 2d at 250 (emphasis added). Even in such cases, "the existence of a provision authorizing the application for a receiver in the event of a default, strongly supports the appointment of a receiver when there is a default." *Id.* (quotation omitted).

Here, the mortgage agreement provides that in the event of a default, "Lender shall be entitled, as a matter of strict right, without notice to any Person and ex parte . . . to have a receiver appointed to enter upon and take possession of the Property [and] collect the Rents[.]" Barrett Decl. Ex. 2 at 64. That provision is more than a mere authorization to apply for a receivership. The Court interprets that provision to show Borrower's consent to the appointment of a receiver. Accordingly, the burden is on Defendants to demonstrate why a receiver should not be appointed, which counsel for Defendants conceded at the August 15 Conference.

Plaintiff has made out a prima facie case for the appointment of a receiver, and Defendants have not met their burden to show why a receiver should not be appointed. Because the Loan is nonrecourse, Plaintiff's only available remedy is to foreclose on the property. Plaintiff has shown a high likelihood of success on the merits of its underlying foreclosure action. The parties do not dispute that Borrower has defaulted on its obligations to Plaintiff under the Loan, and therefore Plaintiff is entitled to foreclose on the Property under the terms of

4

the Mortgage. There is a danger of diminution in the Property's value due to squandering of rents and the nonpayment of taxes. *See Wilmington Tr. v. 31 Prince St., LLC*, No. 22-CV-05855 (JGK), 2023 WL 414249, at *3 (S.D.N.Y. Jan. 25, 2023) (appointing receiver where defendants undisputedly failed to pay property taxes; plaintiff was likely to succeed in underlying foreclosure suit; and borrower had not properly forwarded rent payments to plaintiff). Borrower attributes its defaults to the misconduct of its former property manager and maintains that it is now working to return the Property to profitability and to repay outstanding debts. *See generally* Bici Decl., Dkt. No. 37. But it offers no evidence to suggest that any such improvements are likely, or that Borrower is likely to suffer harm from the appointment of a receiver that would outweigh the potential harm to Plaintiff if no receiver is appointed. Therefore, the relevant factors weigh in favor of appointing a receiver.

Finally, Plaintiff seeks to appoint Orazio Crisalli of Syracuse Realty Group, LLC, as the receiver of the Property, and Defendants do not object to his qualifications.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Appoint Orazio Crisalli of Syracuse Realty Group, LLC, as receiver for the Property is GRANTED.

Dated: August 19, 2025
      New York, New York

SO ORDERED.

_____
MARGARET M. GARNETT
United States District Judge